IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| TANISHA COOK and JAMARR HARRISON, <br><br> Plaintiffs, <br><br> vs. <br><br> WEST HOMESTEAD POLICE DEPARTMENT, BOROUGH OF WEST HOMESTEAD, PAUL FLEMING, JAMES CIOCCO, JOHN DOES 1-10, <br><br> Defendants, | 2:16-CV-01292-CRE |

# **MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I. INTRODUCTION

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Complaint [ECF No. 13]. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs Tanisha Cook and Jamarr Harrison filed the instant civil rights case against Defendants West Homestead Police Department ("WHPD"), Borough of West Homestead ("Borough"), Officer Paul Fleming, Officer James Ciocco and John Does 1-10 related to a high speed chase in which Plaintiffs were injured.

On October 4, 2015, Officer Fleming spotted Jesse Warren's (a non-party to this action) vehicle and suspected that the vehicle that Warren was driving matched the description of a

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

1

vehicle that had been reported stolen. Officer Fleming followed Warren in his marked police vehicle until it stopped on West 8th Avenue in West Homestead, the driver seemingly intending to park the vehicle on the street. Without waiting for backup, and not knowing the identity of the driver, Officer Fleming activated his flashing lights, got out of his cruiser and approached the vehicle with his weapon drawn. As Officer Fleming approached the vehicle on foot, Warren pulled away and traveled down 8th Avenue, passing a second police car driven by Officer Ciocco, who was approaching the site of the traffic stop from the opposite direction. Officer Ciocco made a U-turn and commended pursuit of Warren, while Officer Fleming returned to his car and followed the pursuit. The two officers employed their sirens and flashing lights, but Warren accelerated to speeds approximating 70 miles per hour and the pursuing officers kept pace through the densely populated commercial and residential Borough neighborhoods. Warren refused to stop and disregarded traffic control signs with Officers Fleming and Ciocco pursuing him and eventually crossed a double-yellow line and entered a one-way underpass headed in the wrong direction. The police officers followed. When the pursuit then reached a divided section of state highway 837, Officer Ciocco attempted to pass Warren, but Warren blocked the maneuver. Officer Ciocco pulled back behind Warren's vehicle. The pursuit ended abruptly at the intersection of state route 837 and Commonwealth Avenue in the City of Duquesne where Warren veered into opposing traffic and struck the Plaintiffs' vehicle head-on at a high rate of speed. The Plaintiffs sustained serious bodily injuries from the collision.

Plaintiffs commenced the instant action on August 24, 2016 against the WHPD, the Borough, Officer Fleming, Officer Ciocco and certain John Does alleging the following claims in connection with the high speed pursuit: (1) a state law negligence claim against WHPD, the Borough and Officers Fleming and Ciocco (Count I); (2) a Fourteenth Amendment substantive

due process claim for "injury to bodily integrity" pursuant to 42 U.S.C. § 1983 against all of the Defendants (Count II); and (3) a Fourteenth Amendment substantive due process claim for "injury [caused] as a result of a state created danger" pursuant to 42 U.S.C. § 1983 against all of the Defendants (Count III). *See* Compl. [ECF No. 1] at p. 15, 16. Plaintiffs seek compensatory and punitive damages for their injuries. Defendants presently move to dismiss the constitutional claims levied against them, but do not move to dismiss the state law claims.

### III. STANDARD OF REVIEW

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably

4

authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally can consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

## IV. DISCUSSION

Plaintiffs plead two claims under 42 U.S.C. 1983 against the Defendants for violating their substantive due process rights protected by the Fourteenth Amendment of the United States Constitution. Defendants move to dismiss these claims arguing that Plaintiffs have failed to state a claim and that the Court should decline to exercise supplemental jurisdiction over the remaining state law negligence claims. For the reasons that follow, the Court finds that Plaintiffs have not adequately stated a Fourteenth Amendment substantive due process violation against Officers Fleming and Ciocco and WHPD, but have adequately stated a Fourteenth Amendment substantive due process violation against the Borough.

Plaintiffs assert their substantive due process claim against the Defendants pursuant to 42 U.S.C. § 1983 ("section 1983"), which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

To state a claim under section 1983, a plaintiff is required to show that an individual acting under color of state law violated the plaintiff's constitutional rights or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution

5

and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In order for a plaintiff to adequately state a claim under section 1983, he must establish that the defendants deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Here, it is undisputed that the Defendants were state actors.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. The Due Process Clause includes both a procedural and substantive component. *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992). "The substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)) (internal citations and quotation marks omitted). "Substantive due process contains two lines of inquiry: one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action." *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) (citing *Casey*, 505 U.S. at 846-47). When the challenged conduct is non-legislative, a plaintiff "must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.'" *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (citations omitted).

    1. *Officers Fleming and Ciocco*

Officers Fleming and Ciocco first argue that Plaintiffs have not adequately stated a substantive due process claim and any such claim should be dismissed. In response to the motion to dismiss, Plaintiffs' do not address the argument that the individual officers should be dismissed. Plaintiffs' failure to respond at all to Officers Fleming and Ciocco's arguments for dismissal of the Fourteenth Amendment claims against them will be read as a concession of those arguments, if not a waiver of those issues. *See Smith v. City of Philadelphia*, No. CIV.A. 09-149, 2009 WL 792341, at *5 (E.D. Pa. Mar. 25, 2009) (dismissing plaintiff's claims for failing to respond to defendant's arguments for dismissal). *See also Campbell v. Jefferson Univ. Physicians*, 22 F.Supp.3d 478, 487 (E.D. Pa. 2014) ("Where a nonmoving party fails to address the "substance of any challenge to particular claims, that failure 'constitutes an abandonment of [those] causes of action and essentially acts as a waiver of [those] issues.'") (applying to a motion for summary judgment).

Even if Plaintiff adequately responded to the Officers' arguments, it is well-settled that police officers cannot be held liable under the Fourteenth Amendment for high speed police chases that are undertaken with no intent to harm. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). The Court of Appeals for the Third Circuit has likewise extended that holding to innocent bystanders injured in the course of a high-speed police chase, finding that it is not the inference of an intent to harm evidenced by the police officers in conducting a high speed pursuit, but rather conduct intended to injure that is unjustifiable by any government interest and rises to the conscience-shocking level which is unconstitutional. *Davis v. Twp. of Hillside*, 190 F.3d 167, 170-175 (3d Cir. 1999) (no substantive due process violation for police vehicle deliberately ramming suspect's vehicle causing a collision with an innocent bystander).

Here, the complaint does not allege any facts that Officers Fleming and Ciocco acted

7

with intent to harm or were "tainted by an improper or malicious motive" in responding to Warren's flight that was unjustifiable by any government interest and rises to the level of conscience-shocking. *Lewis*, 118 S. Ct. at 1721; *See Davis,* 190 F.3d at 171.

Accordingly, Plaintiffs' substantive due process claims against Officers Fleming and Ciocco are dismissed.

   *2. WHPD*

WHPD moves to dismiss the substantive due process claims against it, as such claims are duplicative of the claims against the Borough. Again, Plaintiffs fail to address this argument and it will be deemed conceded. Moreover, WHPD is correct that "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) (collecting cases)). Accordingly, because WHPD is merely an arm of the municipality it serves (*i.e.*, West Homestead Borough), and is not a separate legal entity, the constitutional claims against WHPD must be dismissed.

   *3. Borough of West Homestead*

The gist of Plaintiffs' Fourteenth Amendment claim against the Borough is that it failed to properly implement, enforce, or maintain a policy for traffic stops and police pursuits and/or failed to train officers in any policy such that high-speed chases through populated public thoroughfares would be avoided. The Borough moves to dismiss this claim, arguing that because the individual officers did not violate the Plaintiffs' constitutional rights in conducting the high speed pursuit, no municipal liability can be maintained.

Municipalities and other local governmental units "can be sued directly under [section]

8

1983 for monetary, declaratory, or injunctive relief." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "But, under [section] 1983, local governments are responsible only for 'their own illegal acts,'" and, like supervisors, "are not vicariously liable under [section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted, emphasis in original). To state a plausible section 1983 claim against a municipality, the complaint must contain factual allegations showing that a municipal custom or policy caused the constitutional violation. *Monell*, 436 U.S. at 694; *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (the plaintiff must "identify a custom or policy, and specify what that custom or policy was"). "Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom the employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citations and internal marks omitted). "Once a [section] 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). Where the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id.*

*Monell* does not generally authorize monetary damages against a municipal corporation based on the actions of one of its officers when it has been determined "that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S.

9

796, 799 (1986) ("*Heller*"). However, the Court of Appeals for the Third Circuit has carved out an exception to this rule by holding that a municipality can be liable under "section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994).

In *Fagan*, police officers initiated a traffic stop for a suspected moving violation which quickly turned into a high speed pursuit through a highly populated business district and continued through a residential neighborhood. *Id*. at 1288. During the pursuit, the suspect and police officers ran several stop signs and red lights and accelerated to speed of 70 to 80 miles per hour. The pursuit ended when the suspect ran a red light and broadsided two occupants in a pickup truck who were killed. *Id*. at 1289. The survivors of the pickup truck occupants brought a Fourteenth Amendment substantive due process claim against, *inter alia*, the municipality for having a policy of not properly training its police officers on how to conduct high speed pursuits in compliance with the guidelines. *Id*. at 1291. It was later determined that the individual officers did not violate the constitution in their pursuit of the vehicle, and the issue before the Third Circuit was "whether a municipality [could] be held independently liable under section 1983 in a police pursuit case when none of the pursing police officers [were] liable. *Id*. at 1291.

After considering the Supreme Court's holding in *Heller*, the Third Circuit distinguished the holding of *Heller* and held:

> in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. Unlike in Heller, the plaintiffs in this case brought separate, independent constitutional claims against the pursuing officers and the City. These claims are based on different theories and require proof of different actions and mental states. The pursuing officers are liable under section 1983 if their conduct "shocks the conscience." *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir.1994) (en banc). The City is liable under section 1983 if its policymakers,

10

acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.

A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. Even if an officer's actions caused death or injury, he can only be liable under section 1983 and the Fourteenth Amendment if his conduct "shocks the conscience." *Id*. The fact that the officer's conduct may not meet that standard does not negate the injury suffered by the plaintiff as a result. If it can be shown that the plaintiff suffered that injury, which amounts to deprivation of life or liberty, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights. The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.

*Id*. at 1292. The Third Circuit reasoned:

If we conditioned municipal liability on an individual police officer's liability in every case, it might lead to illogical results. A municipality would escape liability whenever the conduct of the acting police officer did not meet the "shocks the conscience" standard, even though municipal policymakers, acting with deliberate indifference or even malice, implemented a policy which dictated his injury-causing actions. It is easy to imagine a situation where an improperly trained police officer may be ignorant of the danger created by his actions and inflicts injury. Meanwhile, the city's policymakers, with a wealth of information available to them, are fully aware of those dangers but deliberately refuse to require proper training. The officer may escape liability because his conduct did not "shock the conscience." It does not follow, however, that the city should also escape liability. The city caused the officer to deprive the plaintiff of his liberty; the city therefore has violated the plaintiff's Fourteenth Amendment rights. *See Barbara Kritchevsky, Making Sense of State of Mind: Determining Responsibility in Section 1983 Municipal Liability Litigation*, 60 Geo.Wash.L.Rev. 417, 457–59 (1992).

*Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994).

While the holding of *Fagan* has been confined to its facts, it has not been expressly overturned and therefore, this court is bound by its holding.[2] *See E.E.O.C. v. Univ. of*

---

[2] The Borough admits that *Fagan* has not been "expressly overruled by a subsequent Third Circuit case," Defs.' Reply [ECF No. 17] at 2, and while the Borough makes a rational argument regarding the cases following *Fagan*, because the facts of this case are directly on point with *Fagan*, and because *Fagan* has not been expressly overturned, this court is bound by its holding.

11

*Pennsylvania*, 850 F.2d 969, 980 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ("The district court . . . lacks authority to overrule an opinion of a previous panel."). Specifically, the Third Circuit has explained that *Fagan's* holding was confined to "a substantive due process claim resulting from a police pursuit[,]" and has refused to apply *Fagan* outside of this narrow scope. *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 n. 5 (3d Cir. 2003) (refusing to apply *Fagan* as the action involved a Fourth Amendment excessive force claim). *See also Estate of Thomas v. Fayette Cty.*, 194 F. Supp. 3d 358, 378-382 (W.D. Pa. 2016) (analyzing *Fagan* and recognizing its applicability to substantive due process claims resulting from police pursuits). A further explained by the Third Circuit, "the *Fagan* panel opinion appeared to hold that a plaintiff can establish a constitutional violation predicate to a claim of municipal liability simply by demonstrating that the policymakers, acting with deliberate indifference, enacted an inadequate policy that caused an injury." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 n. 13 (3d Cir. 1995). *See also McNeill v. Borough of Folcroft*, No. CIV.A. 13-3592, 2013 WL 6158725, at *4 (E.D. Pa. Nov. 22, 2013) (refusing to dismiss a substantive due process claim against a policy maker involving a high speed chase where the officers did not commit a constitutional violation based upon *Fagan's* holding).

In light of this precedent, the fact that Officers Ciocco and Fleming have not violated Plaintiffs' constitutional rights in conducting the high speed pursuit does not preclude Plaintiffs from levying a substantive due process claim against the Borough for failing to properly implement, enforce, or maintain a policy for traffic stops and high speed pursuits and/or failing

---

Additionally, the Borough's reliance on *Scott v. Harris*, 550 U.S. 372, 385-86 (2007) for the proposition that police officers should be afforded much leniency when conducting high speed pursuits is unpersuasive, as that case did not involve the question of municipal liability for substantive due process violations, but rather individual liability under the Fourth Amendment. *Id.* at 385-86.

to train officers in any such policy to avoid high speed pursuits through populated public thoroughfares.[3] Therefore, this is not a legal basis to dismiss the Borough from suit and its motion to dismiss is denied in this respect.

## V.     CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. Specifically, Defendants' motion is granted as to the Fourteenth Amendment substantive due process claims against Officers Fleming and Ciocco and the West Homestead Police Department and Defendants' motion is denied as to the Borough of West Homestead. An appropriate Order follows.

Dated: May 1, 2017.

> By the Court,
> s/ Cynthia Reed Eddy
> Cynthia Reed Eddy
> United States Magistrate Judge

cc:     all counsel of record *via CM/ECF electronic filing*

---

[3] The Borough moved to dismiss Plaintiffs' Fourteenth Amendment substantive due process claim solely on the basis that a constitutional claim cannot exist absent an individual state actor's unconstitutional conduct, and does not argue that any policy was not unconstitutional. Therefore, no determination as to that point will be addressed.